[Civ. No. 40288. Second Dist., Div. Three. Jan. 30, 1973.]

UNITED SAVINGS AND LOAN ASSOCIATION OF CALIFORNIA, Plaintiff and Respondent, v.
MARVIN E. HOFFMAN et al., Defendants and Appellants;
DAVID F. O'BRIEN, Claimant and Respondent.

---

**COUNSEL**

Gordon, Lipstone & Jacoves and Robert P. Gordon for Defendants and Appellants.

David F. O'Brien, in pro. per., for Claimant and Respondent.

No appearance for Plaintiff and Respondent.

---

**OPINION**

**COBEY, Acting P. J.**—Defendants Marvin E. Hoffman and Jewel M. Hoffman, successor trustors, appeal from a minute order awarding surplus receivership funds on deposit with the court in the amount of $5,504.10 to David F. O'Brien, Frances M. O'Brien, Mary L. Morrison and Leroy Morrison, Jr., present owners of the Round Table Apartments and former successor beneficiaries under the second deed of trust upon the apartments.[1] The order was made subsequent to the discharge of the receiver; it is therefore appealable as an order on a collateral matter made subsequent to a judgment. (See Code Civ. Proc., § 904.1, subd. (b); 6 Witkin, Cal. Procedure (2d ed. 1970) Appeal, § 79, p. 4091.)

The Hoffmans challenge the order under appeal on two main grounds: (1) the procedure culminating in the order was fatally erroneous; (2) in any event, no legal basis exists for the disposition made. We disagree and affirm.

---

[1] $715 of these funds are clearly trust funds since they consist of key deposits returnable to the tenants on expiration of tenancy and cleaning deposits of tenants to be expended in cleaning apartments on such expiration. They clearly belong to the O'Briens and the Morrisons. Therefore this opinion hereafter deals only with the disposition made of the remainder of the funds on deposit, namely, $4,789.10.

## FACTS

The receivership was obtained by plaintiff, United Savings and Loan Association of California, the beneficiary under the first deed of trust on the apartments, as a means of enforcing (upon default) the assignment of rents made to it by the Hoffmans as additional security under its deed of trust. (See Code Civ. Proc., § 564, subd. 7; *Mines* v. *Superior Court,* 216 Cal. 776, 778-779 [16 P.2d 732].) The surplus rents at issue were collected by the receiver subsequent to his appointment on April 1, 1970, and prior to his turning · the apartments over to the O'Briens and the Morrisons on September 4, 1970, pursuant to court order.

United began trustee foreclosure proceedings against the Hoffmans in March 1970 following the Hoffmans' default under United's deed of trust. A foreclosure sale in these proceedings was scheduled for August 6, 1970. Meanwhile, in July 1970, the O'Briens purchased the beneficial interest in the second deed of trust on the apartments, which was also in default and also in trustee foreclosure proceedings. The O'Briens then formed a partnership with the Morrisons to acquire and operate the apartments. David O'Brien became the managing partner of this partnership.

Negotiations began at once between United and the O'Briens and the Morrisons to avoid foreclosure under the first deed of trust. The negotiators arrived at a letter agreement on July 31, 1970. This agreement contemplated the immediate termination of the receivership, the reinstatement of United's loan on the apartments and trustee foreclosure pursuant to the second deed of trust. The O'Briens and the Morrisons agreed that concurrently with the execution of the agreement they would open a United passbook savings account in an amount then sufficient to cure the default under United's first deed of trust ($29,379.18) and that they would thereafter maintain this account (which was under the exclusive control of United by means of retention of the passbook) in an amount sufficient to accomplish this purpose.[2] They further agreed that immediately following the contemplated immediate termination of United's receivership, United was "irrevocably authorized" to withdraw from this account an amount sufficient then to reinstate its loan on the apartments.[3] In this agreement United, on its part, agreed to postpone its foreclosure sale, to terminate its receivership promptly and to reinstate its loan on the apartments provided the

---

[2]The deposit with United pursuant to this agreement was made in cashier's checks on or about July 31, 1970, in the amount of $33,216.18.

[3]This withdrawal was thereafter made by United in the aforementioned amount of $33,216.18 and United's loan on the apartment was reinstated on September 28, 1970, by then withdrawing this amount from the savings account.

O'Briens and the Morrisons acquired the apartments by trustee foreclosure of their second deed of trust. As regards the receivership, United also promised that any excess funds it derived therefrom would be used to reduce the principal balance due under its deed of trust.[4]

The foregoing terms of the letter agreement were generally carried out. The trustee foreclosure sale under the first deed of trust scheduled for August 6, 1970 was postponed. The trustee foreclosure sale under the second deed of trust was held on August 14, 1970. The O'Briens and the Morrisons were the sole bidders and bid on the apartments the total amount due them under the second deed of trust, namely, $23,929.84, aside from the $33,216.18 they had already irrevocably deposited with United to cure the Hoffmans' default under the first deed of trust.

The second deed of trust on the apartments contained the following customary agreements by the trustor to protect the security of the deed of trust:

"(4) To pay . . . when due, all encumbrances . . . on said property . . . which appear to be prior or superior hereto . . . .

"Should Trustor fail to make any payment . . . herein provided, then Beneficiary . . . may: make or do the same in such manner and to such extent as [he] may deem necessary to protect the security hereof . . . ; pay . . . any encumbrance . . . which in the judgment of [beneficiary] appears to be prior or superior hereto . . . .

"(5) To pay immediately and without demand all sums so expended by Beneficiary . . . ."

### PROCEDURE

The court below apparently indicated to David O'Brien that it was going to deny his motion for leave to intervene in United's receivership proceeding and suggested that O'Brien instead file a petition for an order to pay his claim against the surplus funds of the receivership together with supporting declarations. O'Brien twice followed the suggested procedure. The court thereafter denied his motion to intervene in the order under appeal that awarded the surplus receivership funds to the O'Briens and the Morrisons.

The Hoffmans challenge the propriety of this procedure on the basis that (1) O'Brien should have been required to file a complaint in intervention; (2) the procedure precluded resort to discovery and cross-exami-

---

[4]United was denied these funds prior to the termination of the receivership.

nation of adverse declarants by the Hoffmans; (3) the court was without power to order distribution of funds to persons who never became parties to the proceeding before it; and (4) in any event, O'Brien, by himself, had no standing to claim the funds at issue.

■ We think that under the circumstances of this case the trial court had discretion to handle O'Brien's claim against the surplus receivership funds on deposit with it as it did or by granting O'Brien leave to intervene in the action pursuant to Code of Civil Procedure section 387.[5] ■ Intervention thereunder must be made "before trial" and O'Brien's motion for leave to intervene was made (see Code Civ. Proc., § 1005.5) the Thursday before the Monday hearing on the receiver's final account and report, including his request for instruction as to the disposition of his surplus funds that he was holding pursuant to an earlier order of the court. On this Monday (October 4, 1971), following a hearing on the receiver's final account and report, such document was approved but the matter of the disposition of the surplus funds was continued and, as previously stated, O'Brien's motion for leave to intervene was not denied until the matter was concluded. Intervention may be permitted at a later stage than ordinarily allowed in proceedings involving claims to a fund in the custody of the court. (See Annot: Time for Intervention (1954) 37 A.L.R.2d 1306, 1311; cf. *Knight* v. *Wacaser* (1942) 317 Ill.App. 162 [46 N.E.2d 176, 179].)

■ Prior to the termination of the receivership the O'Briens and the Morrisons could have merely presented their claim to the surplus rents to the receiver. (See 3 Clark, Law of Receivers (3d ed. 1959) § 646, pp. 1131-1133.) We do not see why the termination of the receivership with the funds remaining in the custody of the court rendered this procedure improper in this case. In any event, we find no abuse of discretion in the procedure chosen. It provided the opposing claimants to the surplus rents, the Hoffmans, with full notice of and substantiation for the claim of the O'Briens and the Morrisons to such rents and a full hearing on the two competing claims. It is true that the nondocumentary evidence upon which the court acted consisted of declarations and a counterdeclaration rather than testimony taken before it and therefore no opportunity was afforded the Hoffmans for either discovery or cross-examination of adverse declarants. A careful examination of the file of the superior court

---

[5]The trial court also could have ordered the O'Briens and the Morrisons joined as parties under Code of Civil Procedure section 389 as it read prior to July 1, 1972.

We note that O'Brien failed to file a proposed complaint in intervention, but the denial of his motion for leave to intervene was not expressly on this ground.

in this case (which we have added to the record on appeal pursuant to rule 12(a) of the Cal. Rules of Court), however, reveals no offer by the Hoffmans as to what they wished to discover or what they expected to develop by means of cross-examination of adverse declarants.

Indeed, there appears to be no dispute in this case as to what actually happened. The crucial dispute is rather as to whether the O'Briens and the Morrisons cured the Hoffmans' default under the first deed of trust in their capacity as successor beneficiaries under the second deed of trust or subsequently as owners of the apartments.

It is true that the O'Briens and the Morrisons never formally became parties to the action and that O'Brien, himself, had no standing to claim the funds on deposit with the court. But the O'Briens and the Morrisons did become de facto parties and were treated as such both by the court and all parties to the action. Furthermore, since partnerships for several years in this state have been permitted to sue in both their assumed and known names (see Code Civ. Proc., § 388, subd. (a)) and since both the court and the Hoffmans were made aware by O'Brien that he was making his claim to the surplus rents solely on behalf of the partnership, consisting of the O'Briens and the Morrisons, we see nothing fundamentally wrong with the court permitting O'Brien to make the claim on behalf of the partnership in this case.

Moreover, the Hoffmans have not shown any prejudice to them resulting from the use of the somewhat novel procedure followed in this case. Its use avoided multiplicity of suits—a commendable objective for a court sitting in equity. Under all the circumstances, even if the procedure chosen by the court below be deemed erroneous, as for example being in violation of Code of Civil Procedure section 367, it is clearly not reversibly so. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

## MERITS

█ The O'Briens and the Morrisons assert that they are entitled to the surplus rents of the receivership since the indebtedness of the Hoffmans to them has not been paid in full because, as previously stated, the bid of the O'Briens and the Morrisons at their trustee foreclosure sale ($23,929.84) was an underbid because it did not include the amount they had advanced to United to cure the Hoffmans' default under the first deed of trust ($33,216.18).[6]

---

[6]This advance was not made pursuant to Civil Code section 2924c because it was not made within three months of the recording of the notice of default by the trustee under the first deed of trust.

Bidding by the beneficiary of less than the full amount owed him results in an

The Hoffmans reply that the cure of their default under the first deed of trust by the O'Briens and the Morrisons was not accomplished until after the latter became the owners of the apartments. We do not agree. Under the aforementioned terms of the letter agreement of July 31, 1970, between United on the one hand and the O'Briens and the Morrisons on the other and the complete relinquishment by the O'Briens and the Morrisons *then* of all control over the curative deposit they then made with United (subject only to conditions subsequent that did not occur), this deposit, when made, constituted an optional irrevocable advance by the O'Briens and the Morrisons to United. The Hoffmans' default under the first deed of trust was therefore effectively cured by the O'Briens and the Morrisons while the latter were still successor beneficiaries under the second deed of trust, notwithstanding the fact that the actual reinstatement of United's loan under the first deed of trust did not occur until September 28, 1970, some six weeks after the O'Briens and the Morrisons became the owners of the apartments through their purchase of them at the trustee foreclosure sale under their second deed of trust.

As just pointed out, under the second deed of trust the O'Briens and the Morrisons had the option of making, as they did, an advance to cure the Hoffmans' default under the first deed of trust and of holding the Hoffmans liable therefor. We hold that such liability obtained under the second deed of trust and that the surplus rents of the receivership were therefore properly paid to the O'Briens and the Morrisons to discharge this liability *pro tanto.*[7]

Furthermore, under Civil Code sections 2876 and 2877 where the holder of a junior deed of trust, as here, is compelled to satisfy a prior deed of trust for his own protection, the amount so paid by the holder of the junior deed of trust becomes a part of the indebtedness due him under his second deed of trust. (See *Windt* v. *Covert,* 152 Cal. 350, 353-354 [93 P. 67].)

We do not think *Eastland S. & L. Assn.* v. *Thornhill & Bruce, Inc.,* 260 Cal.App.2d 259, 261-262 [66 Cal.Rptr. 901], compels a conclusion contrary to the one we have reached. There the party seeking the surplus rents had "bid in the full amount of the deed at the private sale" and

---

underbid. Such underbidding may be intentional. (See Crocker, *Beneficiary's Under-bid—A Neglected Tool* (1969) 44 L.A. Bar Bull. 295, 298-299.)

[7]Under Code of Civil Procedure section 580d the O'Briens and the Morrisons may not recover a deficiency judgment against the Hoffmans.

thereby received full payment of the indebtedness of the trustor to him. This situation did not obtain here.

The order is affirmed.

Schweitzer, J., and Allport, J., concurred.

A petition for a rehearing was denied February 23, 1973, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 29, 1973.